IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHERYL PIROS, | ) | CASE NO. 1:22-CV-00009-SL |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| Defendant. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.   INTRODUCTION

Plaintiff Cheryl Piros ("Piros") seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Period of Disability ("POD"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). (*See* ECF non-document entry dated 09/02/2022). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

## II.   PROCEDURAL HISTORY

On July 27, 2020, Piros filed her application for DIB and POD, alleging a disability onset date of March 28, 2020. (ECF Doc. No. 7, Exhibit 1D, PageID # 331; *id*. at Exhibit 2D, PageID # 334). In her application, Piros asserted that she is a physician assistant, and that she was diagnosed with Churg Strauss Vasculitis in 2009 after she suffered a heart attack in 2008.  (ECF Doc. No. 7, Exhibit 1D, PageID # 333; *see* ECF Doc. No. 7, PageID # 64). Piros stated that one of the side effects of her condition is extreme fatigue, which has progressively worsened, and that it interferes with her ability to critically think. (*Id.*). Piros maintained that "[i]t has become more difficult to

1

perform [her] job as [she] find[s] [her]self making mistakes secondary to marked fatigue[,]" which endangers her patients. (*Id.*).

The Social Security Administration ("SSA") denied Piros's application initially and upon reconsideration, and Piros requested a hearing before an administrative law judge ("ALJ"). (ECF Doc. No. 7, Exhibit 3B, PageID # 245; *id.* at Exhibit 5B, PageID # 251; *id.* at Exhibit 6B, PageID # 255). On September 24, 2021, an ALJ held a hearing via telephone during which Piros, represented by counsel, and an impartial vocational expert ("VE") testified. (ECF Doc. No. 7, PageID # 50-90). On October 13, 2021, the ALJ issued a written decision finding that Piros is not disabled. (*Id.* at PageID # 31-43). The ALJ's decision became final on December 7, 2021, when the Appeals Council declined further review. (*Id.* at PageID # 19-22).

On January 4, 2022, Piros filed her Complaint to challenge the Commissioner's final decision. (ECF Doc. No. 1). The parties have completed briefing in this case. (ECF Doc. Nos. 11, 13). Piros asserts the following assignments of error:

(1) THE ALJ ERRED IN EVALUATING PLAINTIFF'S EOSINOPHILIC GRANULOMATOSIS WITH POLYANGI[I]TIS, AND FAILED TO INCLUDE RESULTING LIMITATIONS IN THE RESIDUAL FUNCTIONAL CAPACITY DETERMINATION.

(2) THE ALJ ERRED IN EVALUATING THE OPINIONS OF PLAINTIFF'S TREATING PHYSICIANS DR. AMSTADT AND DR. VILLA-FORTE.

(3) THE APPEALS COUNCIL ERRED IN NOT REMANDING THIS MATTER BASED ON NEW AND MATERIAL EVIDENCE SUBMITTED ON APPEAL.

(ECF Doc. No. 11, PageID # 1914, 1917, 1918).

## III.    BACKGROUND

### A.    <u>Personal, Educational, and Vocational Experience</u>

Piros was born in 1960, and she was 59 years old on the alleged onset date. (ECF Doc. No. 7, Exhibit 1D, PageID # 331). Piros is married, lives with her husband, and has three adult children. (*Id.* at PageID # 59; ECF Doc. No. 7, Exhibit 5F, PageID # 1251).

2

Piros completed four years of college and worked as a registered nurse in the emergency department for twelve years before returning to school to become a physician assistant. (ECF Doc. No. 7, PageID # 59-60, 64). Piros worked as a physician assistant for fifteen years, and she stopped working on March 30, 2020. (*Id.* at PageID # 63-64). According to Piros, she stopped working primarily due to fatigue, which is a side effect of the vasculitis itself, as well as the autoimmune medications used to treat it. (*Id.* at PageID # 71).

### B.    **Relevant Hearing Testimony**

Relevant to this proceeding, before the testimony began, the ALJ noted that Piros's counsel had informed her that Piros had outstanding medical records from the Cleveland Clinic, and the ALJ asked Piros's counsel about the status of those records. (ECF Doc. No. 7, PageID # 54). Piros's counsel indicated that the records pertained to an office visit from September, which Piros's counsel did not think would "provide anything new to the record[.]" (*Id.*).  The ALJ then noted that she would keep the record open for two weeks to allow Piros to submit those records. (*Id.* at PageID 54-55). At the end of the hearing, the ALJ reiterated that Piros had two weeks to submit the outstanding records, which the ALJ indicated she would consider along with the other evidence. (*Id.* at PageID # 89).

#### 1.    *Piros's Testimony*

Piros testified that she suffered a heart attack in 2008, and that she was diagnosed with vasculitis[1] in 2009. (ECF Doc. No. 7, PageID # 64). Piros testified that she experiences fatigue as a result of her vasculitis, and that she also experiences fatigue as a side effect of the medications she uses to treat it. (*Id.* at PageID # 71). Piros testified that her symptoms started to worsen in 2020, which resulted in an increase in medication, which – in turn – resulted in increased fatigue.

---

[1] In her Brief on the Merits (ECF Doc. No. 11), Piros refers to her vasculitis as Eosinophilic Granulomatosis with Polyangiitis (EGPA) and Churg-Strauss syndrome. (*Id.* at PageID # 1914). For ease of discussion, I will refer to Piros's condition generally as vasculitis.

(*Id.* at PageID # 71-72).

 Piros testified that she stopped working in March 2020 primarily because she was experiencing fatigue, she was catching herself making fatigue-related mistakes, and – as a result – she was concerned she was putting her patients in danger. (*Id.* at PageID # 63, 72-74).  Piros also testified that she has asthma, which causes shortness of breath, and that she experiences pain in her hands and feet, which has progressively worsened. (*Id.* at PageID # 75, 80).

Regarding her daily activities, Piros testified that she usually wakes up around 7:00 a.m. or 8:00 a.m., then she does Bible study for an hour, followed by chores around the house, and then she checks in on her wheelchair-bound father, who lives close by.  (*Id.* at PageID # 78-79). Piros testified that she does all of the household chores in the morning because she becomes "exhausted" within a few hours of waking up. (*Id.* at PageID # 76).  These chores including doing laundry, cleaning floors and bathrooms, doing dishes, vacuuming, and dusting. (*Id.* at PageID # 77).

Piros testified that she used to spend all day in her garden on her days off work, but now she is limited to "an hour or two" before she becomes exhausted and needs to rest. (*Id.* at PageID # 77-78). Piros also testified that she used to walk between two to three miles some afternoons, but now she limits her walking to one mile due to pain in her feet. (*Id.* at PageID # 79). Piros further testified that she reads, watches television, and knits, although these activities are limited by her inability to focus for long periods of time, her fatigue, and the pain in her forearms and hands. (*Id.* at PageID # 79-82). Piros also volunteers at her church, including cleaning bathrooms and floors, and collecting trash. (*Id.* at PageID # 61).

Piros testified that she can lift ten pounds, that she has no limitations in her ability to sit, and that she can stand for twenty minutes before she experiences back pain and needs to sit down. (*Id.* at PageID # 83).

### 2. *Vocational Expert's Testimony*

The VE testified that a physician assistant is normally skilled, light wok, but that Piros's testimony (*i.e.*, that she occasionally needed to help heavy patients get up off the floor, get up from the bed, and/or get out of a wheelchair) indicated that the job as performed was heavy. (ECF Doc. No. 7, PageID # 66-67; *id.* at PageID # 85).

The ALJ asked the VE to assume a hypothetical individual with Piros's age, education, and work experience, who could perform light work with the following limitations:

- can occasionally climb ramps and stairs;
- can never climb ladders, ropes, and scaffolds;
- can occasionally stoop, kneel, and crouch;
- can never crawl;
- can have frequent exposure to extreme cold, extreme heat, humidity, fumes, odors, dust, gases, and poor ventilation; and
- can never be exposed to hazards of unprotected heights and dangerous machinery.

(*Id.* at PageID # 85). The ALJ then asked whether that hypothetical individual could perform Piros's past work. (*Id.*). The VE responded that the hypothetical individual could perform Piros's past work as a physician assistant as it is normally performed in the national economy, but not as Piros performed it. (*Id.* at PageID # 86).

### C.   **Relevant Medical Evidence**

The discussion of the medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and/or deemed relevant to the instant case.

### 1. *Piros's Vasculitis*

As discussed more fully below, Piros argues that the ALJ erred in evaluating her vasculitis at Step Two because the ALJ failed to review the record as a whole, including records reflecting the worsening of her condition. Specifically, Piros cites to the following records:

- A record dated May 1, 2019, from Evelyn Hemmingsen, M.D., reflecting that Piros

5

reported that her neuropathy symptoms were worsening. (ECF Doc. No. 7, Exhibit 1F, PageID # 626-27). That record also indicates that Piros "has known baseline neuropathy related to vasculitis but has had recent worsening past month despite no other signs of flare of va[s]culitis[.]" (*Id.* at PageID # 627).

- A record dated May 22, 2019, from Alexandra Villa-Forte, M.D., M.P.H. indicating that Piros's "disease appears to be in relapse involving mainly the joints." (ECF Doc. No. 7, Exhibit 1F, PageID # 704). That record also indicates that Dr. Villa-Forte advised Piros to increase her prednisone to 20 mg once a day in the morning and, if all of her new symptoms resolved after two weeks, to taper the prednisone. (*Id.* at PageID # 704). That record further indicates that Dr. Villa-Forte ordered Piros to get lab tests in two week and, if the lab results were normal, to increase the dosage of methotrexate. (*Id.*).

- A record dated October 9, 2019, from Dr. Villa-Forte indicating a primary diagnosis of Churg-Strauss syndrome with "active ENT symptoms[.]" (ECF Doc. No. 7, Exhibit 1F, PageID # 735).

- A record dated February 5, 2020, from Dr. Villa-Forte indicating a primary diagnosis of Churg-Strauss syndrome, and noting that Piros's "disease appears to be active and worsened from last visit." (ECF Doc. No. 7, Exhibit 1F, PageID # 764). That record also indicates that Piros's main symptoms were "nasal and sinus congestion, fatigue, and [shortness of breath.]" (*Id.*).

- A record dated June 11, 2020, from Dr. Villa-Forte indicating that Piros's "disease appears to be active but stable from last visit." (ECF Doc. No. 7, Exhibit 1F, PageID # 786). That record also indicates that Piros experienced wheezing and congestion, but that Piros was "feeling about the same." (*Id.* at PageID # 783). That record further indicates that Piros "continues to have symptoms of asthma, chronic sinusitis, joint pain, fatigue, and sensory changes in hands and feet[.]" (*Id.*).

- A record dated September 21, 2020, from Dr. Villa-Forte indicating that Piros's "disease appears to be partially controlled, asthma is better control[l]ed on Mapolizumab. Chronic symptoms of fatigue and neuropathy affect her ability to perform her work[.]" (ECF Doc. No. 7, Exhibit 8F, PageID # 1453, 1457).

- A record dated January 15, 2021, from Dr. Villa-Forte indicating that Piros reported she "has been much worse with pain: lower and mid back, radiates to buttocks, ankles, feet, wrists, hands, elbows and shoulders . . . [f]atigue is much worse[.]" (ECF Doc. No. 7, Exhibit 8F, PageID # 1415). Piros also reported having nasal congestion, but no asthma flares. (*Id.* at PageID # 1416).

- A Functional Capacity Evaluation Summary of Findings dated February 3, 2021, from Brett Balis, P.T., D.P.T. indicating that Piros has an occasional tolerance for fine coordination and simple grasping. (ECF Doc. No. 7, Exhibit 9F, PageID # 1563). That evaluation also included Mr. Balis's opinion that "Piros is presently able to work full time while taking into account her need to alternate sitting and standing[.]" (*Id.*; *see also* ECF Doc. No. 7, Exhibit 9F, PageID # 1569-70).

- A record dated April 8, 2021, from Rula Hajj-Ali, M.D. ordering Piros to increase the gabapentin dosage to 600 mg, and to have a neurology consultation for an evaluation of paresthesias. (ECF Doc. No. 7, Exhibit 10F, PageID # 1584-85; *see also* ECF Doc. No. 7, Exhibit 15F, PageID # 1785-86). That record also indicates that Piros "feels that the majority of the time throughout her disease course, she has been largely in remission[,]" but that her symptoms had worsened over the past year. (*Id.* at Exhibit 10F, PageID # 1580-81).

- A record dated June 8, 2021, from neurologist Jennifer Ui, M.D., indicating a negative EMG for large fiber polyneuropathy, and ordering small fiber neuropathy testing and a skin biopsy. (ECF Doc. No. 7, Exhibit 15F, PageID # 1756).

- A progress note dated June 30, 2021, from Alexandra Harvan, A.P.R.N, C.N.P. indicating that Piros "is asking that someone document her chronic fatigue for record keeping[,]" and noting a primary diagnosis of chronic fatigue, which Piros reported had been progressively worsening since 2019. (ECF Doc. No. 7, Exhibit 16F, PageID # 1813). That record also indicates that Piros's fatigue has been affecting her daily activities, and that Nurse Harvan ordered a polysomnogram. (*Id.*).

- Records from Dr. Villa-Forte documenting Piros's fatigue, Piros's fatigued appearance, and – along with neuropathy – indicating that Piros's fatigue affected her ability to work. (*See* ECF Doc. No. 7, Exhibit 1F, PageID # 700-71 (noting "fatigue"); *id.* at PageID # 755 (reflecting a message from Piros to Dr. Villa-Forte wherein Piros reported being "totally exhausted" by noon each day despite getting good sleep, and expressing concern that this was affecting her ability to critically think and care for patients); *id.* at PageID # 760 (noting that Piros reported struggling with daily fatigue); *id.* at PageID # 783-84 (noting that Piros reported symptoms of daily fatigue and "feeling exhausted[,]" and that Piros appeared fatigued); *id.* at Exhibit 8F, PageID # 1415-16 (noting that Piros reported that her fatigue is much worse, and that Piros appeared fatigued); *id.* at PageID # 1454 (noting that Piros reported that she continues to struggle with daily fatigue, that she has difficulty performing her job because she is fatigued, and that Piros appeared fatigued); *id.* at PageID # 1457 (noting that Piros's chronic symptoms of fatigue and neuropathy affect Piros's ability to perform work)).

- Records indicating that Dr. Villa-Forte adjusted Piros's medications to control her symptoms. (*See* ECF Doc. No. 7, Exhibit 1F, PageID # 686 (ordering Piros to take seven tablets of methotrexate once a week and to take 10 mg of prednisone daily); *id.* at PageID # 704 (ordering Piros to increase her dosage of methotrexate to nine tablets once a week if her labs were normal, and to increase her dosage of prednisone for two weeks, and then taper if her symptoms resolve); *id.* at PageID # 750 (reflecting a message from Piros to Dr. Villa-Forte wherein Piros indicated there was no change in her sinus congestion since increasing the prednisone dosage); *id.* at PageID # 764 (noting that Piros would be a good candidate for Mepolizumab); *id.* at Exhibit 8F, PageID # 1419 (ordering Piros to "[s]kip the Nucala and monitor symptoms and pending this observation we will make [a] decision regarding any new treatment plan[.]").

(ECF Doc. No. 11, PageID # 1914-16).

2.    ***Evidence Submitted to the Appeals Council***

In her Brief on the Merits (ECF Doc. No. 11), Piros asserts that she submitted the following

records to the Appeals Council:

- A record dated October 4, 2021, from Robert Marquardt, D.O. indicating that Piros underwent a QSART procedure and skin biopsy testing to evaluate for possible small fiber neuropathy. (ECF Doc. No. 7, PageID # 124-26).

- A record dated October 15, 2021, from a virtual follow-up appointment with Dr. Ui indicating that the QSART was compatible with small fiber neuropathy, that the skin biopsy results were still pending, and that Piros continued to have numbness/tingling/burning in her hands and feet. (ECF Doc. No. 7, PageID # 108-11). That record also indicates that Dr. Ui increased Piros's dosage of gabapentin. (*Id.* at PageID # 111).

(ECF Doc. No. 11, PageID # 1912).

**D.    <u>Opinion Evidence</u>**

1.    ***Charles F. Misja, Ph.D.***

The Ohio Division of Disability Determination referred Piros to Dr. Misja for a

psychological evaluation related to Piros's alleged mental impairments. (ECF Doc. No. 7, Exhibit

5F, PageID # 1250). Dr. Misja evaluated Piros on December 7, 2020. (*Id.*). Piros reported that she

was fatigued, which was interfering with her ability to critically think, and that she was anxious

because she was afraid of hurting one of her patients and missing important information. (*Id.*). In

his functional assessment of Piros, Dr. Misja opined that: (1) Piros is able to understand,

remember, and implement ordinary instructions; (2) Piros likely has "intermediate to severe"

problems with her ability to maintain attention, concentration, persistence and pace, as well as her

ability to perform simple and multi-step tasks in light of Piros's reports that she experiences

difficulty with critical thinking; (3) Piros has minimal problems with her ability to respond

appropriately to supervisors and coworkers in a work setting; and (4) Piros has minimal problems

with her ability to respond appropriately to work pressures in a work setting. (*Id.* at PageID #1254-

8

55).

### 2.    *Abraham Mikalov, M.D. – State Agency Physician*

Dr. Mikalov reviewed Piros's file on September 13, 2020, and opined that Piros has no functional limitations, and that she has no severe impairments. (ECF Doc. No. 7, Exhibit 2A, PageID # 225).

### 3.    *David Dietz, Ph.D. & Deryck Richardson, Ph.D. – State Agency Psychologists*

Dr. Dietz reviewed Piros's file on December 15, 2020, and opined that there was no evidence of a severe mental impairment. (ECF Doc. No. 7, Exhibit 2A, PageID # 226). Dr. Dietz also opined that Piros has no limitations in her ability to interact with others, and that she has mild limitations in her ability to: (1) understand, remember, or apply information; (2) concentrate, persist, or maintain pace; and (3) adapt or manage herself. (*Id.* at PageID # 225-26). Dr. Richardson reviewed the file on reconsideration, and agreed with these findings on April 20, 2021. (ECF Doc. No. 7, Exhibit 4A, PageID # 233).

### 4.    *Dana Schultz, M.D.*

Dr. Schultz reviewed Piros's file on reconsideration on April 15, 2021, and she concluded that Piros has the following postural limitations: (1) Piros could occasionally climb ramps/stairs, stoop, kneel, and crouch: (2) Piros could never climb ladders/ropes/scaffolds or crawl; and (3) Piros has unlimited balance. (ECF Doc. No. 7, Exhibit 4A, PageID # 234-35). Dr. Schultz also opined that Piros could stand, sit, and/or walk for about six hours in an eight-hour workday, and that Piros had no manipulative limitations. (*Id.*).

### 5.    *Randi Amstadt, D.O.*[2]

On January 27, 2021, Dr. Amstadt, Piros's treating physician, opined that Piros is totally

---

[2] As explained in the resolution of Piros's second assignment of error, Dr. Amstadt's record from January 27, 2021, is not a "medical opinion" as defined under 20 C.F.R. § 404.1513(a)(2).

disabled from performing her job as a physician assistant, but is not disabled from other work. (ECF Doc. No. 7, Exhibit 7F, PageID # 1395). Dr. Amstadt based her opinion on Piros's diagnosis of vasculitis (*i.e.*, EGPA), and her reports of worsening symptoms, including fatigue, memory issues, and pain in her hands, elbows, feet, upper arms, back, and hips. (*Id.*). Dr. Amstadt referred Piros to Brett Balis, P.T. for a functional capacity evaluation. (*Id.* at PageID # 1396; ECF Doc. No. 7, Exhibit No. 8F, PageID #1406).

### 6. *Brett Balis, P.T., D.P.T.*

Mr. Balis completed a functional capacity evaluation on Piros on February 3, 2021. (ECF Doc. No. 7, Exhibit 8F, PageID # 1406). Mr. Balis determined that Piros "demonstrated the ability to perform within the LIGHT Physical Demand Category" and "is presently able to work full time while taking into account her need to alternate sitting and standing[.]" (*Id.* at PageID # 1407).

## IV.    THE ALJ'S DECISION

The ALJ made the following finding of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2.    The claimant has not engaged in substantial gainful activity since March 28, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following severe impairment: degenerative disc disease of the lumbar spine and asthma (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following limitations. The claimant can stand and walk six hours of an eight-hour workday, and can sit for six hours. The claimant can lift and carry up to 20 pounds occasionally and 10 frequently. The claimant can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. The claimant can occasionally stoop, kneel, and crouch. The claimant can never crawl. The claimant is limited to frequent exposure to extreme cold, heat, humidity, fumes, odors, dusts, gases, and poor ventilation, and no exposure to hazards (unprotected

heights or dangerous machinery).

6.    The claimant is capable of performing past relevant work as a physician assistant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from March 28, 2020, through the date of this decision (20 CFR 404.1520(f)).

(ECF Doc. No. 7, PageID # 36-42).

## V.    LAW & ANALYSIS

### A.    <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip* at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the

regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original).

### B.  Standard for Disability

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national

economy. *Id.*

C. <u>**Analysis**</u>

Piros raises three issues for judicial review. First, Piros argues that the ALJ failed to properly evaluate her vasculitis and failed to include appropriate limitations into the RFC stemming from that condition. (ECF Doc. No. 11, PageID # 1914). Second, Piros argues that the ALJ failed to properly evaluate the opinions of two of her treating physicians. (*Id.* at PageID # 1917). Third, Piros argues that the Appeals Council erred by not remanding the case based upon the new evidence she submitted on appeal. (*Id.* at PageID # 1918). For the following reasons, I conclude that Piros's arguments lack merit.

*1. Piros's First Assignment of Error*

As noted, Piros first argues that the ALJ failed to properly evaluate her vasculitis at Step Two, and failed to include appropriate limitations into the RFC stemming from that condition. (ECF Doc. No. 11, PageID # 1914). For the following reasons, I disagree.

*i. Step Two & RFC*

At Step Two of the sequential evaluation process, an ALJ must determine with a claimant's medically determinable impairment is a "severe" impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "Step two has been described as a '*de minimus* hurdle'; that is, 'an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir.1988)). When an ALJ finds severe and non-severe impairments at Step Two and continues with the subsequent Steps in the sequential evaluation process, any error at Step Two is harmless. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th

Cir. 1987).

Prior to determining whether a claimant can perform her past relevant work at Step Four, an ALJ determines a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."); 20 C.F.R. § 404.1520(e) ("[W]e will assess and make a finding about your [RFC] based on all the relevant medical and other evidence in your case record[.]"). RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

### ii.        The ALJ's Analysis

At Step Two, the ALJ determined that Piros's vasculitis is not a severe impairment. (ECF Doc. No. 7, PageID # 36). The ALJ explained:

> The claimant has a history of vasculitis, characterized in the progress notes as Churg-Strauss syndrome, with a remote non-STEMI event in 2008. Once diagnosed, the claimant began treatment with methotrexate and other rheumatological agents, following routinely with cardiology and rheumatology, and there has been no evidence of additional heart attack events or other cardiac emergencies. There was no evidence of a significant worsening of this condition on or around the time of the alleged onset date. Progress notes suggest this impairment is in remission with her current treatment plan. (Exhibit 2F, p. 6). A CT scan of the chest revealed stable appearance of the lungs since a 2013 study, suggesting no significant progression of vasculitis-related complications since that time. (10/20/2020, Exhibit 6F, p. 46-47). Although the claimant reported subjective symptoms of neuropathy in her hands and feet, recent electromyogram (EMG) studies revealed no evidence of polyneuropathy related to this condition. (Exhibit 15F, p. 17). The claimant declined physical therapy and continued with conservative treatment consisting of daily gabapentin. (Exhibit 15F, p. 18). As a whole, the evidence characterized this condition as in remission. While the claimant had chronic sinusitis related to this syndrome, there was no indication of a significant worsening of those ongoing symptoms on or around the alleged onset date. The claimant alleged an immunosuppressed state due to this condition and her related medications, but there was no indication that a medical provider advised that she was unable to continue working throughout this period. As a whole, the evidence failed to demonstrate worsening of this long-standing impairment on or around the alleged onset date with symptoms causing more than minimal work-related limitation.

(*Id.* at PageID # 36-37). The ALJ later addressed Piros's RFC, concluding that Piros "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for

the following limitations[:]"

- Piros can stand and walk six hours of an eight-hour workday, and can sit for six hours;

- Piros can lift and carry up to 20 pounds occasionally and 10 pounds frequently;

- Piros can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds;

- Piros can occasionally stoop, kneel, and crouch;

- Piros can never crawl; and

- Piros is limited to frequent exposure to extreme cold, heat, humidity, fumes, odors, dusts, gases, and poor ventilation, and no exposure to hazards (unprotected heights or dangerous machinery).

(ECF Doc. No. 7, PageID # 39). The ALJ explained that, in making these findings, she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (*Id.* at PageID # 39-40). The ALJ also stated that she "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." (*Id.* at PageID # 40). The ALJ further explained that she considered whether Piros has an underlying medically determinable impairment that could reasonably be expected to produce her pain or other symptoms, and whether Piros statements about the intensity, persistence, and limiting effects of her symptoms are substantiated by objective medical evidence and – if not – whether other evidence in the record indicates that Piros is limited in her ability to do work-related activities. (*Id.*).

The ALJ then explained that Piros "alleged that she is unable to perform fulltime work activity due to the combined effects of her impairments. She has alleged that she experiences back pain, shortness of breath, and fatigue that interferes with prolonged standing and walking. She alleged that pain interfered with sleep and daily activities." (*Id.*). The ALJ concluded that "[a]fter careful consideration of the evidence, the undersigned finds that [Piros's] medically determinable

impairments could reasonably be expected to cause the alleged symptoms; however, [Piros's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.*). The ALJ then explained her rationale for this conclusion as follows:

> The evidence is consistent with back pain that would limit heavy lifting or strenuous postural activities, but does not support symptoms to the degree currently alleged. An MRI scan of the lumbar spine demonstrate lumbar spondylosis without high-grade spinal canal narrowing. There was mild bilateral subarticular zone narrowing at L4-5 and mild right subarticular zone narrowing at L5-S1. There was mild bilateral foraminal stenosis at L4-5 and mild to moderate bilateral foraminal stenosis at L5-S1. (2/3/2021, Exhibit 15F, p. 16). Electromyogram (EMG) of the right upper and lower extremity revealed no evidence of a right lumbosacral motor radiculopathy. (5/21/2021, Exhibit 15F, p. 17).

> The claimant treats for back pain conservatively with physical therapy and recent lumbar epidural steroid injections, and she admitted that these provided temporary relief. There is no evidence that surgical intervention has been recommended to correct the degenerative changes. Physical examinations demonstrate that she maintains strength, sensation, and gait, with no evidence of falls during the period or other mobility-related concerns. (Exhibit 7F, p. 16). She does not utilize a cane or other assistive device. She routinely presented without acute distress on physical examinations, inconsistent with allegations of debilitating pain levels. While back pain would reasonably interfere with her ability to lift and carry heavy objects, as well as to perform constant positional changes throughout the day, the evidence fails to demonstrate that she was experiencing pain levels that would have interfered with light work.

> The evidence also fails to support that the claimant was experiencing disabling respiratory symptoms at the time of the alleged onset date or throughout the period. Spirometry in September 2020 revealed mild obstruction with no significant bronchodilator response. FVC was measured at 3.76 (135 percent of predicted value) and FEV1 was 2.00 (90.8 percent). (Exhibit 6F, p. 32-33). Diagnosis at that time was "uncomplicated asthma." (Exhibit 6F, p. 34). The claimant did not require emergency visits or hospitalization for asthma attacks or other respiratory events. The claimant routinely presented with no respiratory distress on physical examinations with normal lung sounds. She utilized rescue inhalers as needed, with no evidence that these failed to improve her symptoms.

> The claimant presented to family medicine in June 2021 reporting concerns about fatigue, indicating progressive worsening since January 2019, but the physician noted that workup had been unremarkable for underlying causes, and suggested she pursue testing for sleep apnea. (Exhibit 16F, p. 19). There is no indication that the claimant has undergone polysomnography or other sleep testing as of the date of this decision. The undersigned has considered the claimant's respiratory complaints,

including fatigue, in the above residual functional capacity for light activity with environmental precautions, but there is no evidence of greater limitation supported during the period.

(*Id.* at PageID # 40-41).

The ALJ then addressed the opinion evidence and prior medical findings, and explained her conclusions in this regard as follows:

> The claimant underwent a one-time functional capacity evaluation performed by Brett Bal[]is, DPT on February 3, 2021. During the examination, she was observed to sit for a total of one hour and one minute, and stand for a total of 33 minutes, requiring a change of position after standing for 15. Physical examination was intact aside for 4+/5 strength in the hips bilaterally. Range of motion was normal. The evaluator concluded that the claimant could perform a reduced range of light work activity with ability to alternate sitting throughout the day, sitting for up to 10 hour[s] and 30 minutes total during a workday and standing for up to four hours and 41 minutes, two hours at a time. The therapist also opined that she would have upper extremity limitations with reaching and gripping. (Exhibit 9F). This opinion is not fully persuasive, as it was based on a one-time evaluation, and otherwise the record did not demonstrate any significant objective basis for upper extremity limitation. As noted above, a right upper extremity EMG was normal. Examinations did not demonstrate deficits of strength or sensation. Further, the opinion regarding a sit/stand option appeared to be based on the claimant's subjective presentation rather than the objective findings. Strength, sensation, and gait were intact. She walked at an average pace. There was no evidence of shortness of breath. She did not utilize an assistive device. As a whole, the undersigned is persuaded by the opinion that the claimant could perform fulltime work, but finds the limitations on standing, walking, and use of the upper extremities to be an overestimation of her functional difficulties based on a one-time evaluation.

> Instead, the undersigned is persuaded by the prior administrative medical findings of the State agency medical consultant, who opined the claimant was capable of performing a range of light exertional activity, with environmental precautions considering lumbar spondylosis, and asthma with spirometry demonstrating mild obstruction. (Exhibit 4A, p. 5-6). There was no evidence at the hearing level demonstrating worsening of the claimant's severe impairments since this evaluation in April 2021. Of note, the claimant mentioned to her primary care provider that she viewed the onset of the COVID-19 pandemic as a "sign to get out of work," suggesting she would have continued her work activity if not for those extraordinary circumstances. (Exhibit 16F, p. 15). The claimant reasonably has physical limitations due to back pain and asthma, but reports of debilitating, widespread pain and fatigue are not supported by the routine, conservative treatment she received during this period.

(ECF Doc. No. 7, PageID # 41-21). The ALJ concluded that Piros's medically determinable

impairments could reasonably be expected to cause her alleged symptoms, that Piros's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence, and that Piros retained the ability to perform a range of light exertional activities as set forth in the RFC. (*Id.* at PageID # 40, 42).

### iii.        Piros's Arguments

Piros argues that the ALJ erred by determining that the evidence failed to demonstrate a worsening of her long-standing vasculitis on or around the alleged onset date with symptoms causing more than minimal work-related limitations because the ALJ's decision is not based upon the record as a whole. (ECF Doc. No. 11, PageID # 1914). Piros argues that the ALJ erred by supporting her decision in this regard with only one citation to the record which, she asserts, appears to be a progress note from 2010. (*Id.*). Piros further argues that the ALJ failed to include a review of the records from the relevant time period, which demonstrate a worsening of Piros's symptoms. (*Id.*). Piros then cites to the medical records outlined above to support her argument that her symptoms (including her vasculitis-related fatigue) worsened over time, and that they resulted in more than minimal work-related limitations. (*Id.* at PageID # 1914-16).

Piros acknowledges that an ALJ's failure to determine that an impairment is severe at Step Two can result in harmless error when the ALJ proceeds to address the impairment in the remaining Steps. (*Id.* at PageID # 1915). Piros argues, however, that the ALJ's Step Two decision is not harmless error here because the ALJ failed to consider the limitations arising from Piros's vasculitis in the RFC, which – she argues – does not adequately address her extreme fatigue, pain, and neuropathy. (*Id.*). Piros concludes that "[t]he ALJ's finding that [her] vasculitis is not a severe impairment and the ALJ's lack of inclusion of any of its resulting limitations in her [RFC] assessment leaves the ultimate [RFC] finding lacking the support of substantial evidence." (*Id.* at PageID # 1917).

*iv.*        ***Analysis***

Piros has not established that the ALJ committed reversible error by determining that Piros's vasculitis is not a severe impairment, or that the ALJ erred in assessing Piros's RFC. The ALJ considered the medical evidence, including the records documenting Piros's pain and fatigue, cited the portions of the record upon which she relied, and ultimately determined that Piros's complaints of "debilitating, widespread pain and fatigue are not supported by the routine, conservative treatment she received during this period." (ECF Doc. No. 7, PageID # 42). The ALJ explained, in part, that she was persuaded by the medical findings of the state agency medical consultant, who opined that Piros was capable of performing a light range of exertional activity. (*Id.*). Moreover, many of the records Piros cites in support of her argument contain her subjective complaints of pain and fatigue (*see, e.g.*, ECF Doc. No. 7, Exhibit 1F, PageID # 760, *id.* at Exhibit 8F, PageID # 1415), but "an ALJ is not required to accept a claimant's subjective complaints." *Young v. Comm'r of Soc. Sec. Administration*, No. 5:21-CV-00761, 2022 WL 17546359, at *5 (N.D. Ohio Dec. 9, 2022) (quoting *Zingale v. Kijakazi*, No. 1:20-cv-02197, 2022 WL 824148, at *8 (N.D. Ohio Mar. 18, 2022)). Despite her argument to the contrary, Piros has not established that the ALJ committed reversible error at Step Two, or that the ALJ erred in assessing Piros's RFC. Accordingly, Piros's first assignment of error lacks merit.

### 2.  *Piros's Second Assignment of Error*

Next, Piros argues that the ALJ failed to properly evaluate the opinions of two of her treating physicians. (*Id.* at PageID # 1917). For the following reasons, I disagree.

### *i.  Medical Opinion Evidence*

Because Piros's claim was filed after March 27, 2017, the SSA's new regulations ("Revised Regulations") for evaluation of medical opinion evidence apply to this claim. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed.

Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Most relevant to the case at bar is the operative definition of a "medical opinion," which is as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
>
> (i)    Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii)   Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, coworkers, or work pressures in a work setting;
>
> (iii)  Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv)   Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). As the Sixth Circuit has explained, "[a] medical opinion is distinct from 'objective medical evidence,' [20 C.F.R.] § 404.1513(a)(1), or 'other medical evidence,' id. § 404.1513(a)(3), neither of which are required to be considered or assessed for their persuasiveness, see id. § 404.1520c(a)." *Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. Nov. 22, 2022). "Even for a medical opinion, there is no requirement to cite to every piece of evidence or conclusion, id. § 404.1520c(b)(1), nor must the agency give controlling weight to any medical opinion, id. § 404.1520c(a)." *Id.*

Under the Revised Regulations, the Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." 20 C.F.R. § 416.920c(a). Rather, the Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability;

(2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 416.920c(a), (c)(1)-(5). The Revised Regulations make clear that supportability and consistency are the most important factors for evaluation medical source opinions. 20 C.F.R. § 416.920c(a).

The Revised Regulations also changed the articulation required by ALJs in their consideration of medical opinions. The new articulation requirements are as follows:

(1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

(2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how

21

> we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)
> of this section for those medical opinions or prior administrative medical findings
> in your determination or decision.

20 C.F.R. § 416.920c(b)(1)-(3).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore. Dec. 2, 2019) (quoting 20 C.F.R. §§ 404.1520c(a) & (b)(1), 416.920c(a) & (b)(1)) (alterations in original). A reviewing court "evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Id.*

### ii.    Piros's Arguments

Piros argues that the ALJ erred by failing to evaluate the persuasiveness of the opinions of Dr. Amstadt, her primary care physician, and Dr. Villa-Forte, her treating rheumatologist. (ECF Doc. No. 11, PageID # 1917). Piros asserts that both of these doctors opined that Piros's worsening symptoms significantly and negatively impact her ability to perform work activity. (*Id.*). Piros concludes that the absence of any evaluation of these opinions hinders this Court's ability to engage in a meaningful review of the ALJ's RFC's assessment. (*Id.* at PageID # 1918).

In support of her argument, Piros cites: (1) a "Distance Health Visit" record dated January 27, 2021, from Dr. Amstadt wherein Dr. Amstadt indicated that Piros's pain was getting worse, that Piros was totally disabled from her job, and that Piros was not totally disabled from any other work (ECF Doc. No. 7, Exhibit 7F, PageID # 1395); and (2) a record dated October 11, 2020, from Dr. Villa-Forte, wherein Dr. Villa-Forte indicated that Piros's chronic symptoms of fatigue and neuropathy affect her ability to work, but that Piros's "disease appears to be partially controlled[.]" (ECF Doc. No. 7, Exhibit 8F, PageID # 1457).

### iii.    *Analysis*

Piros's argument lacks merit. The records Piros cites are not "medical opinions" as defined in the SSA Regulations. *See* 20 C.F.R. § 404.1513(a)(2). Neither Dr. Amstadt's record dated January 27, 2021, nor Dr. Villa-Forte's record dated October 11, 2020, include "a statement . . . about what [Piros] can still do despite [her] impairment(s)" or a statement about "whether [Piros] ha[s] one or more impairment-related limitations or restrictions" in the abilities listed in 20 C.F.R. § 404.1513(a)(2)(i)-(iv). Moreover, regarding Dr. Amstadt's determination that Piros is totally disabled from doing her job, whether Piros is or is not disabled is a determination reserved for the Commissioner, and the ALJ was not required to analyze Dr. Amstadt's determination in that regard. *White v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-762, 2022 WL 3282429, at *12 (N.D. Ohio June 1, 2022), *report and recommendation adopted sub nom. White v. Comm'r of Soc. Sec.*, No. 3:21 CV 762, 2022 WL 3097385 (N.D. Ohio Aug. 4, 2022) ("[T]he regulations specify that the ALJ 'will not provide any analysis' of certain other evidence that is deemed 'inherently neither valuable nor persuasive.' 20 C.F.R. §§ 404.1520b(c), 416.920b(c). Among the evidence considered 'neither valuable nor persuasive' are all statements regarding 'issues reserved for the Commissioner,' which include any statement that a claimant is or is not 'disabled[.] 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i)."). Piros's second assignment of error, therefore, lacks merit.

### 3.   *Piros's Third Assignment of Error*

Next, Piros argues that the Appeals Council erred by not remanding the case based upon the new evidence she submitted on appeal. (ECF Doc. No. 11, PageID # 1918). For the following reasons, I conclude that Piros's argument lacks merit.

### i.    *New Evidence*

Evidence submitted for the first time to the Appeals Council cannot be considered for purposes of determining whether substantial evidence supports the ALJ's decision; it may only be

considered to determine whether remand is appropriate under Sentence Six of 42 U.S.C. § 405(g). *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Under Sentence Six of 42 U.S.C. § 405(g), the District Court does not affirm, modify, or reverse the Commissioner's decision; it does not rule in any way as to the correctness of the administrative determination. *Melkonyan v. Sullivan*, 501 U.S. 89 (1991); *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 734 (N.D. Ohio 2005) ("'Sentence six' of 42 U.S.C. § 405(g) permits a reviewing court to remand, without ruling on the merits."). If a Sentence Six remand is ordered, the District Court retains jurisdiction while the matter is remanded to the Social Security Administration for further proceedings; it is not a final judgment that can be appealed. *Melkonyan*, 501 U.S. 89; *Cross*, 373 F.Supp.2d 724; *Wasik v. Comm'r of Soc. Sec.*, No. 09–14933, 2011 WL 740686 (E.D. Mich. Feb. 24, 2011).

A claimant must establish two prerequisites before a District Court may order a Sentence Six remand. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 484 (6th Cir. 2001). A claimant must show: (1) the evidence at issue is both "new" and "material"; and (2) there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). The party seeking remand bears the burden of meeting these two requirements. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

The Sixth Circuit has explained that "evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding." *Foster*, 279 F.3d at 357. Such evidence, in turn, is deemed "material" if "there is a probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with new evidence." *Id.* However, "evidence that demonstrates a [claimant's] deteriorating condition is not relevant to a remand determination under Sentence Six." *Wasik*, 2011 WL 740686 at *6. Moreover, "[r]ecords that show a lack of improvement, which were created after the ALJ's disability determination,

cannot be used to show disability existed at the time of the disability determination." *Id.* Evidence of the aggravation or deterioration of a condition is not relevant because "it does not demonstrate the point in time that the disability itself began." *Guy v. Comm'r of Soc. Sec.*, No. 11-12828, 2013 WL 1148413, *11 (E.D. Mich. Feb. 19, 2013) (quotation omitted).

### ii.     The ALJ's and the Appeals Council's Analyses

As noted, the ALJ determined that Piros's vasculitis is not a severe impairment. (ECF Doc. No. 7, PageID# 36-37). Relevant to Piros's third assignment of error, the ALJ explained:

> Although the claimant reported subjective symptoms of neuropathy in her hands and feet, recent electromyogram (EMG) studies revealed no evidence of polyneuropathy related to this condition. (Exhibit 15F, p. 17). The claimant declined physical therapy and continued with conservative treatment consisting of daily gabapentin. (Exhibit 15F, p. 18). As a whole, the evidence characterized this condition as in remission.

(*Id.* at PageID # 37). Piros submitted additional records after the hearing before the ALJ, and the Appeals Council addressed those records as follows:

> You submitted medical records from Cleveland Clinic dated June 8, 2021, to October 4, 2021 (107 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

> You submitted medical records from Cleveland Clinic dated October 15, 2021 (24 pages). The Administrative Law Judge decided your case through October 13, 2021. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before October 13, 2021.

(ECF Doc. No. 7, PageID # 20).

### iii.     Piros's Arguments

Piros argues that the Appeals Council erred by failing to properly consider the medical records she submitted after the hearing before the ALJ. (ECF Doc. No. 11, PageID # 1919-20). Specifically, she cites to: (1) the record dated October 4, 2021, indicating that Piros underwent a QSART procedure and skin biopsy to evaluate for possible small fiber neuropathy (ECF Doc. No. 7, PageID # 124-26); and (2) the record dated October 15, 2021, indicating that the QSART results

were compatible with small fiber neuropathy, and "consistent with a postganglionic sympathetic sudomotor abnormality like that seen in autonomic/small fiber neuropathy." (*Id.* at PageID # 110). Piros asserts that these records undermine the ALJ's determination that her vasculitis in not a severe impairment because, in assessing Piros's subjective complaints, the ALJ found no evidence of polyneuropathy related to her diagnosis of EGPA to support her symptoms of neuropathy in her hands and feet. (ECF Doc. No. 11, PageID # 1919). Piros asserts that these new records render the ALJ's decision unsupported by substantial evidence, and renders the ALJ's credibility assessment based on a mistaken interpretation of the record. (*Id.*).

Regarding the Appeals Council, Piros argues that it erred by determining that the additional evidence she submitted did not relate to the time period at issue. (ECF Doc. No. 11, PageID # 1920). She argues that the above-cited records do relate to the time period at issue because they show that her neuropathy has been a consistently worsening problem throughout the relevant time period, and they show that it significantly impacts her ability to perform work-related activities. (*Id.*)

### iv.  *Analysis*

Piros's argument lacks merit. First, to the extent Piros argues that the Appeals Council erred by not remanding the matter, "[t]his Court does not review the Appeals Council decision, but rather determines whether to remand this matter pursuant to 42 U.S.C. § 405(g), Sentence Six based on the supplemental medical records presented to the Council." *Clayton v. Comm'r of Soc. Sec.*, No. 1:20-CV-00553, 2021 WL 4271976, at *1 n.13 (N.D. Ohio Sept. 20, 2021). Second, to the extent Piros argues that the new evidence demonstrates that the ALJ's decision lacks the support of substantial evidence, evidence submitted for the first time to the Appeals Council cannot be considered for purposes of determining whether substantial evidence supports the ALJ's decision; rather, it may only be considered to determine whether

remand is appropriate under Sentence Six of 42 U.S.C. § 405(g). *See Foster*, 279 F.3d at 357. Third, Piros has not argued – let alone established – that good cause existed for her failure to acquire and present the evidence for inclusion in the hearing before the ALJ, and "[t]he mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Phillips v. Comm'r of Soc. Sec.*, No. 5:20 CV 126, 2021 WL 252542, at *12 (N.D. Ohio Jan. 26, 2021) (quoting *Courter v. Comm'r of Soc. Sec.*, 479 F. Appx. 713, 725 (6th Cir. 2012)). Fourth, even if Piros had established good cause, she has not demonstrated that the records are material, that is, that there is a possibility that the ALJ would have reached a different disposition of her disability claim if presented with the new evidence. *Foster*, 279 F.3d at 357. Other records indicate that Piros's condition worsened at times (*see, e.g.*, ECF Doc. No. 7, Exhibit 1F, PageID # 764 (reflecting a record dated February 5, 2020, from Dr. Villa-Forte noting that Piros's "disease appears to be active and worsened from last visit")), and there is no indication that the ALJ would have reached a different conclusion regarding Piros's disability claim had the ALJ been presented with the October 15, 2021, record reflecting a QSART result of small fiber neuropathy (ECF Doc. No. 7, PageID # 110). In sum, Piros has not met her burden of demonstrating that remand is appropriate under Sentence Six. Accordingly, Piros's third assignment of error lacks merit.

## VI.     RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the ALJ's decision.

Dated: January 5, 2023

*s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the

interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).